Filed 4/24/26  P. v. Novinger CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>STEPHEN ALAN NOVINGER,<br><br>    Defendant and Appellant. | C102824<br><br>(Super. Ct. No. STKCRFE20220010850) |

Appointed counsel for defendant Stephen Alan Novinger asked this court to review the record and determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436.)  We will modify the judgment to vacate certain ancillary costs imposed despite defendant's inability to pay.  As modified, the judgment is affirmed.

## I.  BACKGROUND

*A.    Charges and Pretrial Proceedings*

In November 2023, a second amended information charged defendant with possession of a controlled substance while armed with a loaded, operable firearm (Health

& Saf. Code, § 11370.1, subd. (a)—count 1), vehicle theft (Veh. Code, § 10851, subd. (a)—count 2), receipt of a stolen vehicle (Pen. Code,[1] § 496d, subd. (a)—count 3), three counts of unlawful possession of a firearm (§ 29800, subd. (a)(1)—counts 4-6), three counts of unlawful possession of ammunition (§ 30305, subd. (a)(1)—counts 7-9), custodial possession of a weapon (§ 4502, subd. (a)—count 10), and misdemeanor receipt of stolen property (§ 496, subd. (a)—count 11). As to counts 1 through 9, it was further alleged that defendant committed the offenses while released on bail (§ 12022.1). As to counts 1 through 10, it was further alleged that defendant had two prior serious felony convictions (§§ 667, subd. (d), 1170.12, subd. (b)). Multiple aggravating factors were also alleged as to counts 1 through 10. (Cal. Rules of Court, rule 4.421.) The trial court granted defendant's request for a bifurcated court trial on the prior strikes, on bail enhancements, and aggravating factors.

Prior to trial, the trial court considered and denied defendant's *Marsden*[2] motion.

B.    *Prosecution Trial Testimony*

1.    *August 2022 Break-In of Defendant's Mother's Car*

Defendant's mother testified that her car was broken into sometime between August 26 and 27, 2022. There was no damage to the car, and nothing of hers was missing. But defendant told her that he was missing two cell phones, his driver's license, two credit cards, and some phone chargers, so she filed a police report.

2.    *September 2022 Truck Break-In*

Wayne testified that, on September 7, 2022, he was visiting a friend's house. Through a front window, he saw defendant getting in and out of the back of a black car parked down the street. Defendant knelt down, shuffled things around, and held a white

---

[1] Undesignated statutory references are to the Penal Code.

[2] *People v. Marsden* (1970) 2 Cal.3d 118.

plastic bag. Defendant spoke with the driver, who drove off after defendant motioned for the car to leave. About 10 minutes later, defendant walked toward the house and started looking at Wayne's truck, which was parked on the property about 40 feet from the friend's house. Defendant opened the driver's side door and started going through the truck, including the glove box and the backseat. Wayne called 911 and watched as defendant, who was still holding a white plastic bag, walked across the street toward a field of grapevines. Defendant knelt down and rummaged through his bag for a few minutes. Defendant then walked down the street, and the black car drove by. When Wayne inspected the truck, he found paperwork from the truck's glove box strewn about the truck cab and realized a small television that had been in the back seat was missing.

San Joaquin County Sheriff's Deputy Megan Flint responded to Wayne's 911 call. She noticed the truck's glove box was empty, and some items had been moved around in the back seat. Deputy Flint interviewed Wayne about the incident.

Meanwhile, Sheriff Deputy Charles Chatfield was also dispatched to the scene with instructions to look for a black car. He soon saw a car matching the description and pulled it over. Defendant was the only passenger in the car, and he seemed a "little high strung" and under the influence. While talking with the driver, codefendant Brandee Harmon, and defendant, Deputy Chatfield noticed a small, black television sticking out from underneath the floor mat. Deputy Chatfield and another responding officer detained Harmon and defendant. The officers later found paperwork belonging to Wayne along the road near Wayne's truck.

The officers transported defendant to jail. During the booking process, Correctional Officer Zachary Patterson searched defendant and found a butterfly knife with a four-inch blade inside one of defendant's shoes.

3.     *October 2022 Failure to Return Sedan After Test Drive*

L.C., a manager at a local car dealership, testified that, in October 2022, he called police because he had let a man and his female companion test drive a 2012 black

3

midsize sedan priced at $12,995.  L.C. gave the man permission to drive the sedan for about 20 minutes, but the man never returned.  Before the man drove away in the sedan, L.C. photocopied the man's driver's license, but L.C. lost the copy before the trial.  At trial, L.C. recognized defendant as someone "familiar," but he was unsure whether it was defendant who test drove the sedan.  L.C. did not give defendant permission to keep the sedan.

    *4.       November 2, 2022 Incident*

Erik, a first responder for a local school district, testified that at around 5:20 p.m. on November 2, 2022, he was dispatched to a local elementary school because someone had been setting off fireworks from across the street.  He arrived at the scene and noticed a suspicious man, who he identified as defendant, standing beside a black sedan.  During the next 20 minutes, Erik watched defendant move things in and out of the car, including a gasoline can and what looked like fireworks.  Erik requested help from local police, who arrived about 10 minutes after he called.

While waiting for the police to arrive, Erik noticed a black car with two female passengers circling the neighborhood.  Erik later learned that the black car was registered to Harmon.  At one point, Harmon's car stopped near defendant, and defendant took a gas can out of the sedan and handed it to a passenger in Harmon's car.  Harmon's car drove off into the neighborhood but returned.  Defendant took back the gas can from a passenger in Harmon's car and then resumed pacing around the sedan until responding police officers arrived.  At that point, defendant fled toward a nearby apartment complex.  Defendant jumped two fences and Erik N. lost sight of him.  Erik noticed Harmon's car was still circling the neighborhood.

City of Stockton Police Officer Glen Galas testified that he and his partner Officer Daquan Graves were dispatched to the local elementary school at around 5:30 p.m. on November 2, 2022.  He drove by defendant standing next to a black sedan, which had open doors, a popped hood, and an open gas tank cover.  Defendant started walking

around the sedan. Officer Galas circled back and stopped his patrol car about 20 feet in front of the sedan, got out, and, along with Officer Graves, approached the sedan. Defendant started walking away while holding a gas can and a cellphone. Officers Galas and Graves followed defendant, who started running away. Officer Galas lost sight of defendant.

Instead of pursuing defendant, the officers decided to have the sedan towed, as it was partially blocking a driveway. As per their standard practice, they conducted an inventory search of the sedan. In addition to various electronics and clothing, the officers found loaded magazines for an AR-style semi-automatic rifle, AR-style rifle parts, a complete AR rifle, a loaded magazine for a semi-automatic handgun, and handgun parts. The officers also found a wallet with defendant's identification card, a knife, a container for aluminum foil, a glass tube that appeared to be the type to smoke methamphetamine, and several pieces of what appeared to be methamphetamine inside a plastic baggie and a round cylinder. Officer Galas also found a shoebox containing paperwork for defendant, including a bail bond.

The officers spent more than two hours searching the car and processing its contents. Defendant returned to the scene around 8:00 p.m. wearing an ankle monitor wrapped in aluminum foil. A probation department supervisor testified that defendant's ankle monitor showed he was near the school around 5:12 p.m., left the area around 6:05 p.m., and returned around 8:05 p.m. Officer Daniel Sandrio testified that, in November 2022, he tested the rifle found in the sedan and found it functional.

City of Stockton Police Officer Patrick High, a firearms expert, testified he inspected the firearm parts found in the sedan. He explained that, when you put the "lower" frame and "upper" components together, it made a firearm.

A criminalist from the Department of Justice lab analyzed items found in the sedan and found 84 grams of methamphetamine, "much more than a usable amount."

5

For purposes of the unlawful possession of a firearm and ammunition charges, defendant stipulated that he had a prior felony conviction.

C.    *Defense Trial Evidence and Jury Verdicts*

Defendant's mother testified that she lived about a 10 minute walk from the elementary school. On the afternoon of November 2, 2022, defendant had been visiting for about an hour or two when he got a phone call and left. It was still light at the time.

Defendant and A.D.'s mother were friends. A.D. testified that, on the day defendant was arrested, she called him to let him know that property belonging to him and her mother was in a car.

The jury found defendant guilty of all counts except count 2. As to count 3, the jury found that the car was worth more than $950.

D.    *Court Trial for Enhancements and Aggravating Circumstances; Sentencing*

The court separately found the on-bail enhancements to be true as to counts 1 and 3 through 9. As to counts 1 and 3 through 10, the court also found true that defendant had two prior strikes. The court also found true multiple aggravating circumstances.

In December 2023, the trial court considered defendant's *Marsden* motion and appointed a new attorney for the limited purpose of considering whether there were grounds to move for a new trial. In September 2024, the new attorney informed the trial court that defendant would not file such a motion.

Defendant asked the trial court to impose a substance abuse program in lieu of a prison sentence, with a six-year term stayed on successful completion of the program. Alternatively, defendant asked the court to impose a six-year term, with all other time concurrent. Defendant acknowledged his criminal history was "extensive." He noted, however, much of his criminal history was drug-related, and he was currently participating in a substance abuse program in jail. Defendant also asked the court to strike his prior strike convictions under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). Defendant argued his prior strike convictions should be

6

stricken because he committed them around the time his father passed away, and he was suffering from drug abuse.

The People requested the trial court impose the maximum sentence and objected to the court granting the *Romero* motion, given the seriousness of defendant's offenses, his multiple recent strike convictions, that he was on multiple grants of probation at the time of the offenses, and was also released on bail when most of the offenses were committed.

The trial court considered defendant's consistent criminal history since 2012, poor behavior in jail, including drug possession and behavioral outbursts, aggressive behavior with jail staff, and the probation officer's assessment of him as "high violent." The trial court also noted a trial court had twice previously stricken his prior strike convictions and he continued to commit offenses. The court found defendant's crimes were increasing in violence and he had been released on bail and probation when he committed the current crimes, which involved drugs, thefts, and guns. The trial court also considered defendant's "normal" childhood history, family and marital history, and employment history. Given defendant's entire history, the court found he did not fall outside the spirit of the Three Strikes law, and declined to strike any of defendant's prior strikes.

The trial court sentenced defendant to prison for 14 years eight months, as follows: 10 years (the upper term of four years, doubled due to the prior strike plus two years for the on-bail enhancement) for count 1; 16 months consecutive (one-third the middle term of two years, doubled due to the strike) for count 3; four years (the middle term of two years, doubled due to the strike) stayed under section 654 for count 4; 16 months consecutive (one-third the middle term of two years, doubled due to the strike) for count 5; four years concurrent (the middle term of two years, doubled due to the strike) for each of counts 6, 7, 8, and 9; and two years consecutive (one-third the middle term of three years, doubled due to the strike) for count 10. The court also sentenced defendant on cases not at issue in this appeal. The court dismissed the on-bail enhancements for counts 3 through 9. (§ 1385, subd. (c)(1)(b).)

7

In selecting the upper term on the principal count, the court found that the aggravating circumstances outweighed the mitigating factors. Defendant was on probation at the time of the crimes, and he had numerous prior convictions. These factors were not outweighed by any childhood trauma, especially since defendant told the probation officer that he had a good childhood. In addition, defendant had previously been given leniency, but he failed to take advantage of it by seeking drug treatment.

The court imposed a $300 restitution fine (§ 1202.4, subd. (b)), a corresponding $300 parole revocation fine (suspended unless parole is revoked) (§ 1202.45), a $400 court operations assessment (§ 1465.8, subd. (a)(1)), and a $300 criminal conviction assessment (Gov. Code, § 70373). Defendant asked the trial court to stay the fines in light of the fact that defendant had not been working. The court responded that it could not stay the restitution or parole revocation fines based on inability to pay. However, "I know he's not been working because they said that in the probation report. Due to the inability to pay, I can suspend the $300 in court conviction[] fees and the $400 in court operations assessments." The court awarded 1,536 days of custody credit.

Later that month, the trial court held a hearing and reduced defendant's sentence for count 3 to one year consecutive, thereby reducing defendant's aggregate prison sentence to 14 years four months.

In January 2025, the trial court revisited the sentence for count 3 and reimposed the 16-month consecutive sentence, thereby reinstating the aggregate prison sentence of 14 years eight months.

Defendant timely appealed.

## II. DISCUSSION

Appointed counsel filed an opening brief setting forth the facts of the case and asking this court to review the record and determine whether there are any arguable issues on appeal. (*People v. Wende, supra*, 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing the

8

opening brief. More than 30 days have elapsed, and we have received no communication from defendant.

In *People v. Kopp* (2025) 19 Cal.5th 1, our Supreme Court recently held that, if a defendant requests, a trial court must consider the defendant's inability to pay before imposing a court operations assessment under section 1465.8, subdivision (a)(1), or a court facilities assessment under Government Code section 70373, subdivision (a)(1). (*People v. Kopp, supra*, at p. 30 [given that the Legislature has provided fee waivers to indigent civil litigants, "equal protection principles require a court, upon request, to consider a [criminal] defendant's inability to pay" *before* imposing either assessment].) Here, defendant argued he had not been working and was therefore unable to pay any fines and fees, and the trial court agreed as to the court operations and court facilities assessments. However, instead of waiving these fees as a court would do for an indigent civil litigant, the trial court imposed and stayed the ancillary costs. (*Id.* at p. 30 ["No similar differences justify denying criminal defendants the right to seek a waiver of certain ancillary costs when civil litigants facing the same costs may receive such a waiver"].) While the trial court did not have the benefit of our Supreme Court's recent decision in *Kopp* at the time it imposed fines and fees, the order nonetheless violated defendant's equal protection rights, and we must strike the fees.

Having undertaken an examination of the entire record, we find no other arguable error that would result in a disposition more favorable to defendant.

## III.  DISPOSITION

The judgment is modified to vacate the $400 court operations assessment (§ 1465.8, subd. (a)(1)) and $300 criminal conviction assessment (Gov. Code, § 70373). As modified, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment in accordance with this opinion and to forward a certified copy to the Department of Corrections and Rehabilitation.

/S/
RENNER, Acting P. J.

We concur:

/S/
KRAUSE, J.

/S/
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10